**SMEGO MARINE TRANSPORT, INC., Plaintiff,**

v.

**INTERNATIONAL TRADING & TRANSPORT, LTD., Defendant.**

**No. GC 76–164–S.**

United States District Court, N. D. Mississippi, Greenville Division.

July 15, 1977.

Swank, Lane & Associates, Clayton J. Swank, III, Greenville, Miss., for plaintiff.

J. Robertshaw, Robertshaw & Merideth, Greenville, Miss., Richard Blaise Jurisich, Coleman, Dutrey, Thomson, Meyer & Jurisich, New Orleans, La., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This is an action upon a Contract of Affreightment for the transportation of crude oil, fuel oil, and/or gasoline (petroleum products).

Plaintiff, Smego Marine Transport, Inc. (carrier) is a foreign corporation qualified to do business in Mississippi. Defendant, International Trading & Transport, Ltd. (shipper) is a Louisiana corporation and is not qualified to do business in Mississippi.

The contract is dated March 20, 1974, and was negotiated and executed in New Orleans, Louisiana. The contract provides that the agreement "shall become effective upon execution and shall have an initial term of one year from the date on which the shipper accepts delivery of the tow from carrier for loading, now estimated to be on or about June 15, 1974." The contract provides for renewal or extended terms but this provision is not pertinent to the issue before the court.

In the contract the carrier and the shipper agree for the transportation of petroleum products aboard equipment owned or chartered by the carrier and for the loading or unloading of the cargo at any safe port on the Mississippi, Ohio, Illinois, Arkansas and Tennessee Rivers and at any safe port on the Gulf Intracoastal Waterways not east of Port St. Joe, Florida or west of Brownsville, Texas.

The contract contains a provision whereby the shipper warrants unto the carrier that a safe berth free of wharfage and dockage will be provided at loading and unloading points.

Another contract provision is that the carrier will dedicate for exclusive use in the movement of petroleum products under the contract four barges as therein described and will furnish a towboat of not less than 3800 horsepower with a crew which will include two licensed tankermen to be used in connection with the towage.

The shipper agreed by the terms of the contract to provide dockside personnel necessary for the loading and unloading of the cargo; and to be responsible for compliance with United States Coast Guard regulations pertaining to the displaying of lights on barges.

The tugboat and its tow left the Greenville Port on its maiden voyage under the contract on July 20, 1974, for movement to St. Rose, Louisiana to take on a cargo for transportation to the Port of Vicksburg, Mississippi. After taking on the cargo at the Louisiana Port the tow moved to

Vicksburg where the petroleum products were unloaded at the facility of Mississippi Power and Light Company.

During the life of the contract, the tugboat and its tow made 23 voyages, eight of which involved Mississippi ports, either in an unloading or in a loading operation. Of the eight, the tugboat and tow moved into the Port at Pascagoula on five occasions, and into the Port of Vicksburg on three occasions. All movements of the tow were subject to and made pursuant to the direction of the shipper.

In compliance with requirements of law, the shipper prepared and filed with the designated Mississippi official reports reflecting the movement of petroleum products into Mississippi. On one occasion an official of the shipper, while in Mississippi, observed weather conditions at Pascagoula and advised the carrier that he did not deem the lay-up of the tow as being required by the prevailing weather.

The carrier alleges a breach of the contract by the shipper and seeks to recover from the shipper on account thereof actual damages in the sum of $158,797.54, and punitive damages amounting to $200,000.00.

The shipper has been served with process pursuant to Mississippi's long-arm statute [1] which provides for service of process on a non-resident corporation, not qualified to do business in Mississippi, through the Office of the Secretary of State, where such corporation has entered into a contract with a Mississippi resident to be performed in whole or in part within the state, or has performed any character of work or service, or done any business within the state.

The shipper has filed a motion to dismiss the action for lack of in personam jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2). The shipper contends that the contacts had with the state in the performance of the contract are not sufficient to bring it within the purview of § 13–3–57, and that to subject it to in personam jurisdiction in the action before this court would offend the "traditional notions of fair play and substantial justice" rule enunciated by the Supreme Court in *International Shoe Company v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

The court said in *International Shoe, supra* :

> But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

326 U.S. 316, 66 S.Ct. 158, 90 L.Ed. 102.

Here the shipper had several contacts under the contract with Mississippi. Petroleum products were either loaded or unloaded on eight different occasions at a port in Mississippi. The shipper contracted to furnish dockside personnel and guaranteed the carrier a safe berth free from wharfage and dockage. The shipper submitted reports concerning the movement of petroleum products to proper state officials.

1. The statute reads in pertinent part as follows:
   Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi. Such act or acts shall be deemed equivalent to the appointment by such nonresident of the secretary of state of the State of Mississippi, or his successor or successors in office, to be the true and lawful attorney or agent of such nonresident upon whom all lawful process may be served in any actions or proceedings accrued or accruing from such act or acts, or arising from or growing out of such contract or tort, or as an incident thereto, by any such nonresident or his, their, or its agent, servant or employee.
   Miss.Code Ann. § 13–3–57 (1972).

The shipper agreed to be responsible for compliance with certain Coast Guard regulations when the tow was in port.

The court has determined that the shipper has had sufficient contacts with Mississippi under the provisions of the Contract of Affreightment to make it amenable to process under the long-arm statute of the state. Accordingly, the motion to dismiss will be overruled.

An appropriate order will be entered by the court.